**SO ORDERED.**

**SIGNED November 30, 2005.**



_____
GERALD H. SCHIFF
UNITED STATES BANKRUPTCY JUDGE
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

IN RE:

WENDELL MARKS and                                    CASE NO. 05-50026
GRACE H. MARKS,

   Debtors                                           CHAPTER 13

----------------------------------------------------------------
### REASONS FOR DECISION
----------------------------------------------------------------

     Wendell Marks and Grace H. Marks ("Debtors") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code[1] on January 4, 2005, and an order for relief was entered on that day. The Debtors' Chapter 13 Plan ("Plan") was filed that same date.

     Homecomings Financial Network ("Homecomings"), the holder of a promissory note secured by the Debtors' residence, filed a proof of claim asserting an arrearage claim in the amount of $5,610.50, which consisted of the following:

---

[1] Title 11, United States Code. References herein to sections of the Bankruptcy Code are shown as "section ___."

(1) $3,399 representing actual missed payments;

(2) $15 in accrued late charges;

(3) $810 in foreclosure fees;

(4) $1,150 in foreclosure costs;

(5) $105 for BPO (Brokers Price Opinion); and

(6) $150 for attorney fees for preparation and filing of the proof of claim.

Homecomings also filed an objection to the Plan on the basis that the arrearage amount set forth in the Plan was insufficient to pay the amount claimed in the proof of claim. In response, the Debtors filed an objection to Homecomings' proof of claim, asserting that certain fees and expenses claimed by Homecomings were excessive and unreasonable.

After a hearing thereon, the court sustained the objection to the Homecomings' claim in part, allowing the arrearage claim in the amount of $4,855.50 only. Homecomings timely filed its **MOTION TO RECONSIDER ORDER SUSTAINING OBJECTION TO CLAIM** ("Motion"). Prior to ruling on the Motion, the court, on August 1, 2005, confirmed the Debtors' amended chapter 13 plan. A hearing on the Motion was held on September 21, 2005. After hearing argument from counsel, the matter was taken under advisement.

## JURISDICTION

The case has been referred to this court by the Standing Order

of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana.  No party in interest has requested a withdrawal of the reference.  The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

These Reasons for Decision constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

**LAW AND ANALYSIS**

At the original hearing on the Objection to Claim, the court disallowed (a) the attorney fees for filing of a proof of claim in the amount of $150, (b) $600 of the foreclosure fees and costs (identified as "title fees"), and (c) the BPO fee of $105. Homecomings now seeks reconsideration of that ruling on the basis that the mortgage documents allow for such charges, or alternatively that the fees and expenses are necessary and reasonable.

The pertinent language in the instant case can be located in Paragraph 7 of the mortgage and provides as follows:

> Protection of Lender's Rights in the Property.  If the borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect the Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), **then Lender may do and pay**

Page 3

> **whatever is necessary to protect the value of the Property and Lender's rights in the Property**. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.
>
> Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment. (Emphasis added).

The Debtors argue that the disputed fees were, at most, an attempt to protect Homecomings' claim or interest in the property and was not an attempt to protect the property itself. They take the position that the language in the mortgage only allows for actions to be taken to protect both the value of the property **AND** the lender's rights in the property. The court disagrees.

While the language in Paragraph 7 is conjunctive, the clear intent of the paragraph is to allow reimbursement for expenses and/or fees related to protecting the property or the creditor's rights in the property. Even if the court were to accept the Debtors' argument that the language was drafted by Homecomings and should be construed against it, actions taken to protect the value of the property certainly go to protect the creditor's rights in the property.

The crucial issue is whether the costs at issue herein were

Page 4

necessary to protect Homecomings' interest and, if so, whether the amounts thereof were reasonable. Courts within the Fifth Circuit have generally indicated that fees and costs are appropriately granted under section 506(b) provided that the creditor satisfies four elements: (1) the creditor's claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement. See, e.g., In re Valdez, 324 B.R. 296 (Bankr. S.D. Tex. 2005).

There is no dispute but that the first two elements have been satisfied in this case. Further, the court acknowledges that the above-quoted mortgage language is broad enough to encompass such charges. The key issue is the necessity and reasonableness of such expenditures.

The Valdez court recognized that two independent aspects must be considered in order to determine whether fees and/or costs are reasonable. Not only must the charge assessed be reasonable, but the action taken must also be reasonable:

> In considering whether fees are reasonable under §506, the Court must independently determine whether the creditor 'took the kind of actions that similarly situated creditors might reasonably conclude should be taken . . . .'"

324 B.R. at _____.

(1) Proof of claim fee. The issue in the present case is not whether it is reasonable for a creditor to file a proof of claim,

Page 5

but whether it is reasonable for the creditor to hire counsel to file such claim. The court acknowledges that proofs of claim are sometimes filed by attorneys on behalf of their creditor clients; generally speaking, however, proofs of claim are filed by personnel employed by the creditor who are familiar with the particular mortgage and debtor. In fact, many large creditors employ personnel who are specialists who only deal with bankruptcy issues.

The information contained in a proof of claim generally comes from a creditor's file and is not legal in nature to the extent attorney involvement is required. The process generally requires filling in blanks on the form and attaching documentation. While in certain cases the court might agree that pre-filing review by an attorney is reasonable, the court concludes in the instant case that similarly situated creditors would not reasonably conclude that it was necessary for Homecomings to hire an attorney to prepare and file its proof of claim. The proof of claim fee is disallowed.

(2) <u>Title fees</u>. Homecomings initiated foreclosure proceedings in the instant case prior to the bankruptcy filing. Title fees incurred during the foreclosure proceeding have been included in the proof of claim in the amount of $600.00, which includes initial work as well as an update. Homecomings asserts that the initial title work has to be ordered before the foreclosure petition is

filed to ensure that there are no other mortgages or encumbrances against the property, and if there are such mortgages or encumbrances, to determine the ranking of each and to verify the ownership of the property being foreclosed on. Homecomings further asserts that an update must be ordered prior to the property going to sheriff sale to ensure that if there are junior lienholders, that they receive notice of the foreclosure pursuant to the requirements of <u>Mennonite Board of Missions v. Adams</u>, 462 M.S. 791 (1983). The property at issue was scheduled to go to sheriff sale on February 16, 2005, were it not for the instant bankruptcy filing. Homecomings asserts that title work is an essential element of the foreclosure process, which had already been initiated when the bankruptcy case was filed. According to Homecomings, without title work, it would be impossible to transfer marketable title to the foreclosing creditor by way of the foreclosure sale.

Homecomings has provided affidavits from their counsel, P. Herman Wessels, an employee of the title company used by creditor's counsel, Sarah Crowe, as well as three separate attorneys who do a substantial amount of creditor work in this district, namely, Fred A. Rogers, III, Stacy G. Butler, and Ashley S. Burch. Each of the affidavits of the attorneys attest that the attorneys believe that it is reasonable and necessary to obtain a title opinion during a

foreclosure proceeding.

The court concludes that Homecomings has satisfied both the necessary and reasonable requirements for allowance of the title fees.

(3) <u>Brokers Price Opinion ("BPO")</u>.  The BPO is a drive-by appraisal performed to give a creditor a general idea of the value of the property.  The BPO fee included in the instant case is $105.00.  Homecomings argues that the fee is necessary when a loan becomes delinquent in order to ensure that the property is being maintained and upheld and is not vacant. In addition, the creditor asserts that the BPO is necessary prior to foreclosure to ensure that the value of the property has not decreased.

The court does not believe that the BPO is reasonable.  The BPO is not used during the foreclosure proceeding but only by the creditor itself.  During the foreclosure proceeding, an actual appraisal is obtained.  The addition of fees for a drive-by appraisal which merely gives the creditor some minor comfort is not reasonable.  As such, the court will not allow this cost.

Accordingly, the Motion is GRANTED IN PART.  A separate order in conformity with the foregoing reasons has this day been entered into the record of this proceeding.

###